UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| EUGENE MURGUIA, an individual, | Case No. 3:12-cv-00347-MMD-WGC |
| Plaintiff, | |
| v. | ORDER |
| | (Defs.' Motion to Dismiss – dkt. no. 8) |
| JACK PALMER, an individual, ADAM WATSON, an individual, and DAMON HAYCOCK, an individual, | |
| Defendants. | |

## I.   SUMMARY

Before the Court is Defendants Jack Palmer, Adam Watson, and Damon Haycock's Motion to Dismiss.  (Dkt. no. 8.)  Defendants seek dismissal of the lawsuit filed against them arguing that it seeks to chill their First Amendment right to petition the government for redress.  For the reasons discussed below, the Motion is denied in part and granted in part.

## II.   BACKGROUND

This case arises from the alleged employment discrimination against Plaintiff Eugene Murguia ("Plaintiff").  Plaintiff is a Sergeant at Northern Nevada Correctional Center ("NNCC").  Defendant Jack Palmer ("Palmer") is the Warden of NNCC, Adam Watson ("Watson") was the Associate Warden, and Damon Haycock ("Haycock") was the Acting Associate Warden (collectively, "Defendants"). Plaintiff alleges that Defendants conspired together to prevent his promotion in retaliation for the assistance

that he gave to a co-worker in filing a complaint against Defendants. The following facts are alleged in the Complaint:

In April 2011, Plaintiff witnessed Haycock, with Watson present, pin Dan Hanson, another employee, into a corner and verbally assault and threaten him. Plaintiff aided Hanson in reporting the incident through official channels. No disciplinary action was ever taken, and neither Plaintiff nor Hanson was ever interviewed regarding the incident.

Thereafter, Defendants engaged in derogatory comments regarding Plaintiff's prospects for promotion to the position of Lieutenant. Defendants agreed to informally sanction Plaintiff for his aid to Hanson by impeding his opportunity for promotion. One or more individuals observed Defendants participating in these conversations and, on one occasion, Watson angrily told Plaintiff to his face, "you will never be promoted."

Watson's comment came a week before Plaintiff was interviewed for a Lieutenant position. Although being in the top five qualifiers prior to the interview process, Plaintiff was not selected for the promotion. NNCC initially interviewed candidates to promote two individuals to the position of Lieutenant; however, the only resulting promotion was that of an individual who ranked below Plaintiff in the qualifiers and had been a Sergeant for a much shorter time than Plaintiff. Later, another set of interviews for which Plaintiff was again in the top five qualifiers was cancelled by Palmer. Candidates were required to re-qualify with respect to time and experience. Palmer rigged the scoring of these tests to downgrade Plaintiff so he would not qualify.

Plaintiff filed a report with the Equal Employment Opportunity Officer regarding these allegations, which was forwarded to the Inspector General's office. Nonetheless, no investigation has been undertaken, and Plaintiff believes Defendants quashed any action regarding the matter.

Plaintiff filed this suit alleging violations of 42 U.S.C. § 1983 and a state law claim for tortious discharge. Plaintiff claims that as a result of Defendants' conduct, he has suffered and continues to suffer damages in excess of $10,000. Plaintiff also seeks punitive damages. Additionally, Plaintiff asserts that others who have exercised their

rights on matters of public concern at the Nevada Department of Corrections ("NDOC") have similarly confronted barriers to job advancement, making this a pattern and practice known to, tolerated by, and ratified by NDOC management.  Plaintiff asserts that NDOC has failed to train and supervise its managerial staff so as to discourage and prevent retaliatory practices in hiring, promotions, advancements, and recognitions to those who exercise their First Amendment rights. Defendants brought this Motion to Dismiss arguing that the federal claim is barred by the *Noerr-Pennington* Doctrine, and that the state law claim is barred by Nevada's anti-SLAPP provisions in NRS 41.635 – 41.670, or alternatively, is not a recognized cause of action in Nevada.

## III.    DISCUSSION

### A.    Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to rise above the speculative level." *Id.*  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570.

### B.    Analysis

#### 1.    *Noerr-Pennington* Immunity

"Under the *Noerr-Pennington* doctrine, those who petition all departments of the government for redress are generally immune from liability."  *Empress LLC v. City and County of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005).  Although the doctrine originally only provided individuals immunity from anti-trust laws, *see, e.g.*, *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137 (1961), *Noerr-*

1    *Pennington* immunity has been expanded to protect an individual's First Amendment
2    right to petition the government for redress of grievances generally, even where that
3    petitioning may give rise to civil liability, *see, e.g., Empress*, 419 F.3d at 1056.
4    Additionally, the doctrine has also been expanded to immunize government officials,
5    employees, and entities from federal claims under § 1983.  *See Affordable Housing Dev.*
6    *Corp. V. City of Fresno*, 433 F.3d 1182, 1193 (9th Cir. 2006).

7         Defendants assert that their conduct is protected petitioning activity and
8    consequently, immunized by the *Noerr-Pennington* immunity.  However, this assertion is
9    generally unsupported.  Defendants cite to no authority which states that hiring and
10   promotion decisions are petitioning activity.  Defendants instead rely on their argument
11   that as representatives of the public, they are charged with promoting only the most
12   qualified individuals and Plaintiff's suit seeks to chill their pursuit of this duty and punish
13   them for carrying it out.

14        The Court is not persuaded that hiring and promotion decisions by government
15   officials are petitions to the government for the redress of grievances.  First, it is unclear
16   to whom a government official petitions in making a hiring or promotion decision, and
17   further, for what grievance that government official seeks redress.  Such decisions do
18   not fall within the paradigm of what is usually thought of as petitioning.  Additionally, the
19   Court finds the alleged facts dissimilar to that which has been found to be protected
20   petitioning activity such as lobbying, *Boone v. Redevelopment Agency of the City of San*
21   *Jose*, 841 F.2d 886, 894-95 (9th Cir. 1988), communications with the police, *Forro*
22   *Precision, Inc. v. Int'l Bus. Machines Corp.*, 673 F.2d 1045, 1060 (9th Cir. 1982), writing
23   a letter to a zoning commissioner, *Empress*, 419 F.3d at 1057, or encouraging the public
24   to vote in a particular way, *Affordable Housing*, 433 F.3d at 1189-90.

25        Second, classifying a day-to-day decision such as a hiring or promotion decision
26   as protected petitioning activity would immunize almost every decision made by
27   government officials.  Such immunization could potentially ratify various discriminatory
28   practices of government officials rendering § 1983 effectively meaningless in the

4

1   employment context.  The Court is unwilling to expand the *Noerr-Pennington* exception

2   such that it swallows the rule.

3               **2.      Nevada's Anti-SLAPP Statute**

4               Defendants similarly assert Plaintiff's state law claim is a strategic lawsuit against

5   public participation ("SLAPP"), which seeks to chill their participation in public affairs.

6   Under NRS 41.650, "[a] person who engages in a good faith communication in

7   furtherance of the right to petition is immune from civil liability for claims based upon the

8   communication."   "[T]he purpose of Nevada's anti-SLAPP statute is similar to the

9   purpose behind the *Noerr–Pennington* immunity doctrine," "predicated on protecting

10  well-meaning citizens who petition the government and then find themselves hit with

11  retaliatory suits known as SLAPP suits."  *John v. Douglas County School Dist.*, 219 P.3d

12  1276, 1281 (Nev. 2009) (internal quotations omitted).   Accordingly, "the anti-SLAPP

13  statute only protects citizens who petition the government from civil liability arising from

14  *good faith communications to a government agency.*"  *Id.* (*citing* NRS 41.637).

15              Where a SLAPP lawsuit is filed, the person against whom it is filed may bring a

16  special motion to dismiss.  NRS 41.660(1).  This special motion is treated as a motion for

17  summary judgment.  NRS 41.660(3)(a).   "Since the special motion to dismiss is

18  procedurally treated as a summary judgment . . . the district court can only grant the

19  special motion to dismiss if there is no genuine issue of material fact and the moving

20  party is entitled to judgment as a matter of law."  *John*, 219 P.3d at 1281.  Therefore, in

21  evaluating the special motion, the movant bears the initial burden of production and

22  persuasion and must make a "threshold showing that the lawsuit is based on good faith

23  communications made in furtherance of the right to petition the government."  *Id.* at 1282

24  (internal quotations omitted).

25              Defendants have not met their burden for two reasons.  First, as explained above,

26  Defendants have not persuaded the Court that their conduct can be considered

27  petitioning activity.   Consequently, Plaintiff's suit is not a SLAPP suit to which the

28  provisions of the anti-SLAPP statute would apply and Defendants are not entitled to

1  judgment as a matter of law.  Second, even if Defendant's conduct was considered

2  petitioning activity, the Complaint details facts regarding Defendant's conspiring to

3  prevent Plaintiff's promotion.  These facts sufficiently allege that the communications

4  were made in bad faith and not protected by the anti-SLAPP statute.  Consequently,

5  whether or not Defendant's discussions and evaluations were influenced by Plaintiff's aid

6  to Hanson in reporting Haycock's verbal assault is a question of material fact, which

7  remains to be resolved.

8              **3.      Failure to State a Claim**

9          Defendants also assert that Plaintiff's state law claim is not a recognized claim of

10  action in Nevada. "An employer commits a tortious discharge by terminating an

11  employee for reasons which violate public policy." *D'Angelo v. Gardner*, 819 P.2d 206,

12  212 (Nev. 1991).  Defendants argue that because Plaintiff was not terminated, he has

13  not stated a claim for tortious discharge, but rather seeks to assert a claim for tortious

14  non-promotion, which is not a recognized cause of action in Nevada.  Indeed, Plaintiff's

15  Complaint acknowledges that Nevada has not recognized the claim of tortious discharge

16  absent discharge or constructive discharge, however, Plaintiff asserts a good faith basis

17  in law and fact to extend the tort to retaliatory denial of promotions.

18          This issue has not been specifically addressed by the Nevada Supreme Court.

19  The Court declines to extend Nevada law to find that tortious discharge covers a failure

20  to promote. Because Plaintiff does not allege that he was discharged, Plaintiff's

21  Complaint does not allege sufficient facts to state a claim for tortious discharge. Thus, as

22  to this claim, the Defendants' Motion is granted.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1  **IV.   CONCLUSION**

2        IT IS THEREFORE ORDERED that Defendants Motion to Dismiss is DENIED as

3  to the § 1983 claim and GRANTED as to the tortious discharge claim.

4

5        DATED THIS 27th day of March 2013.

6

7                                          MIRANDA M. DU

8                                          UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28