UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| EUGENE MURGUIA, an individual,<br><br>                          Plaintiff,<br>    v.<br><br>JACK PALMER, an individual, ADAM WATSON, an individual, and DAMON HAYCOCK, an individual, et al.,<br><br>                          Defendants. | Case No. 3:12-cv-00347-MMD-WGC<br><br>ORDER<br><br>(Defs' Motion for Summary Judgment –<br>dkt. no. 47) |

## I.      SUMMARY

Before the Court is Defendants Jack Palmer, Adam Watson, and Damon Haycock's Motion for Summary Judgment ("Motion") (dkt. no. 47). For the reasons stated below, the Motion is granted.

## II.      BACKGROUND

This case arises from the alleged employment discrimination against Plaintiff Eugene Murguia. The following facts are taken from the Complaint. (Dkt. no. 1-2.)

Plaintiff is a Sergeant at Northern Nevada Correctional Center ("NNCC"). Defendant Jack Palmer ("Palmer") is the Warden of NNCC, Adam Watson ("Watson") was the Associate Warden, and Damon Haycock ("Haycock") was the Acting Associate Warden. Plaintiff asserts that Defendants conspired together to thwart his promotion as a method of retaliation for the assistance that he gave to a co-worker in making a report to the Equal Employment Opportunity ("EEO") Officer against Defendants.

1    In April 2011, Plaintiff witnessed Haycock, with Watson present, "pin" another

2  employee, Dan Henson, into a corner and verbally assault and threaten him. (Dkt. no. 1-

3  2 at ¶ 7.) Plaintiff supported Henson in his report of the incident through official channels.

4  (*Id.* at ¶ 8.) Plaintiff and Henson were never interviewed regarding the incident, and no

5  disciplinary action ever took place. (*Id.*)

6    Subsequently, due to Plaintiff's aid to Henson in his complaint regarding the

7  assault by Haycock, all Defendants agreed that Plaintiff would be non-promotable as a

8  sanction. (*Id.* at ¶ 9.) Haycock admitted to engaging in derogatory comments with

9  Watson and Palmer about Plaintiff with respect to his ability to be promoted to

10  Lieutenant. (*Id.*) One or more witnesses observed Defendants participating in such

11  conversations, and Watson at one point angrily told Plaintiff to his face, "you will never

12  be promoted." (*Id.* at ¶ 12.) This comment occurred one week before Plaintiff

13  interviewed for a Lieutenant position. (*Id.* at ¶ 13.)

14    Plaintiff was among the top five qualifiers for a Lieutenant position, yet he was not

15  selected for the promotion. (*Id.*) Two positions for Lieutenant were open, but only one

16  individual who ranked below Plaintiff and who had been Sergeant for a shorter amount

17  of time was selected for the promotion. (*Id.* at ¶ 14.)  A later set of interviews for which

18  Plaintiff was again in the top five qualifiers was cancelled by Palmer, because he wanted

19  to be a part of the interview process but was too busy to attend. (*Id.*) Plaintiff believes

20  that participation of wardens in the interview process is rare. (*Id.*) Candidates for the

21  position were required to re-qualify, and Palmer sabotaged Plaintiff's ability to qualify by

22  taking over the scoring process and downgrading Plaintiff. (*Id.*)

23    Plaintiff made reports with the EEO Officer regarding the incidences. (*Id.* at ¶ 10.)

24  The information was forwarded to the Inspector General's office. (*Id.*) However, Plaintiff

25  believes that any action or investigation regarding his complaint was quashed by the

26  administration. (*Id.*)

27    Plaintiff filed this action alleging violations of 42 U.S.C. § 1983 and a state law

28  claim for tortious discharge.

1    Defendants filed a motion to dismiss Plaintiff's claims. (Dkt. no. 8.) The Court

2    granted the motion in part and dismissed Plaintiff's claim for tortious discharge. (Dkt. no.

3    19.)

4    Defendants now seek summary judgment on the remaining claim under 42 U.S.C.

5    § 1983 for violation of Plaintiff's First Amendment rights.  Plaintiff filed an opposition (dkt.

6    no. 59), and Defendants filed a reply (dkt. no. 60).

7    **III.    LEGAL STANDARD**

8    The purpose of summary judgment is to avoid unnecessary trials when there is no

9    dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

10    F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate pursuant to Fed. R.

11    Civ. P. 56 when the pleadings, the discovery and disclosure materials on file, and any

12    affidavits "show there is no genuine issue as to any material fact and that the movant is

13    entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330

14    (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a

15    reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it

16    could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby,*

17    *Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material

18    facts at issue, however, summary judgment is not appropriate. *Warren v. City of*

19    *Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise

20    a genuine issue of material fact is enough 'to require a jury or judge to resolve the

21    parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897,

22    902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89

23    (1968)). In evaluating a summary judgment motion, a court views all facts and draws all

24    inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v.*

25    *Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

26    The moving party bears the burden of showing that there are no genuine issues

27    of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In

28    order to carry its burden of production, the moving party must either produce evidence

3

1   negating an essential element of the nonmoving party's claim or defense or show that

2   the nonmoving party does not have enough evidence of an essential element to carry its

3   ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210

4   F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements,

5   the burden shifts to the party resisting the motion to "set forth specific facts showing that

6   there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may

7   not rely on denials in the pleadings but must produce specific evidence, through

8   affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME*

9   *Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show

10   that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285

11   F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a

12   scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*,

13   477 U.S. at 252.

14   **IV.    DISCUSSION**

15        42 U.S.C. § 1983 provides a mechanism for the private enforcement of

16   substantive rights conferred by the Constitution and federal statutes. *Graham v. Connor,*

17   490 U.S. 386, 393-94, 109 S.Ct. 1865 (1989). Section 1983 "is not itself a source of

18   substantive rights, but merely provides a method for vindicating federal rights elsewhere

19   conferred." *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (internal quotation marks and

20   citation omitted). To state a claim under § 1983, a plaintiff "must allege the violation of a

21   right secured by the Constitution and the laws of the United States, and must show that

22   the alleged deprivation was committed by a person acting under color of law." *West v.*

23   *Atkins,* 487 U.S. 42, 48-49 (1988). Here, Plaintiff relies on substantive rights conferred

24   by the First Amendment.

25        A First Amendment retaliation claim against a government employer involves a

26   sequential five-step series of questions: "(1) whether the plaintiff spoke on a matter of

27   public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3)

28   whether the plaintiff's protected speech was a substantial or motivating factor in the

1
2
3
4
5

adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 708-09 (9th Cir. 2009) (quoting *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)).

6
7
8
9
10
11

Plaintiff must satisfy the first three steps of the five-step test. *Ellins v. Cnty. Of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013) (citing *Eng*, 552 F.3d at 1070). If the plaintiff succeeds, then the burden shifts to the government to establish the fourth and fifth steps. *Ellins*, 710 F.3d at 1056 (citing *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009)). Because the Court finds that Plaintiff cannot satisfy the first step, the Court need not address the remaining steps.

12
13
14
15
16
17
18
19

In analyzing the first step of the inquiry, public concern, "the essential question is whether the speech addressed matters of 'public' as opposed to 'personal' interest. *Desrochers*, 572 F.3d at 709 *(*citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). The plaintiff "bears the burden of showing that the speech addressed an issue of public concern." *Eng*, 552 F.3d at 1070 (citations omitted). "'Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.'" *Eng*, 552 F.3d at 1070 (quoting *Connick*, 461 U.S. at 147–48); *see also Desrochers*, 572 F.3d at 709.

20
21
22
23
24
25
26
27
28

The content of the speech is the greatest single factor in the *Connick* inquiry. *Desrochers*, 572 F.3d at 710 (citations omitted). In order to address a matter of public concern, the content of the speech must involve "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Id.* (internal quotation marks and citations omitted). "Speech that deals with 'individual personnel disputes and grievances' that 'would be of no relevance to the public's evaluation of the performance of governmental agencies' generally is not of public concern." *Ellins*, 710 F.3d at 1057 (citing *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)); *see also Connick*, 461 U.S. at 154

1    (speech limited to "an employee grievance concerning internal office policy" is

2    unprotected). The same is true of "speech that relates to internal power struggles within

3    the workplace," and speech that is of no interest "beyond the employee's bureaucratic

4    niche." *Desrochers*, 572 F.3d at 710 (citing *Tucker v. Cal. Dep't of Educ.*, 97 F.3d 1204,

5    1210 (9th Cir. 1996)).

6         In considering whether speech was made in the public interest, the Ninth Circuit

7    considers "whether the speech was made to further some purely private interest" and

8    whether the speech was made in the context of a workplace "power struggle."

9    *Desrochers*, 572 F.3d at 715 (internal quotation marks and citations omitted). For

10   example, in *Demers v. Austin*, 746 F.3d 402, 416 (9th Cir. 2014), the Ninth Circuit

11   determined that the plaintiff's pamphlets contained a plan to improve his school and was

12   therefore a matter of public concern, in part because it did not address the role of

13   particular individuals or address public complaints and was made available to the public.

14   In *Connick*, an assistant district attorney strongly opposed being transferred and

15   circulated a questionnaire to her office "concerning office transfer policy, office morale,

16   [and] the level of confidence in supervisors." 461 U.S. at 140-41. The Supreme Court of

17   the United States determined that these matters were not of public concern but "mere

18   extensions" of her "dispute over her transfer." *Id.* at 148. In *Ellins*, the Ninth Circuit

19   looked at *Connick* and determined that the dispositive fact in that case was that the

20   speech "resulted from an *individual* personnel grievance" as opposed to *collective*

21   personnel grievances such as those raised by unions. 710 F.3d at 1057.

22        Defendants challenge the alleged speech as "nothing more than an observation

23   of an 'internal power struggle within the workplace' or 'internal office matter' that does

24   not constitute speech on a matter of public concern." (Dkt. no. 47 at 8.) The Court

25   agrees.

26        Plaintiff submits no evidence of the content of his alleged speech about the

27   interaction between Haycock and Henson save for his brief description of it in his own

28   deposition testimony. He says that he walked in on Haycock yelling at Henson about

6

1    Henson's wanting overtime for work performed on the weekend. (Dkt. no. 59-1, Exh. 1 at

2    6-7.) Haycock had ordered Henson to work that weekend. (*Id.*) Haycock told Henson,

3    "you are lucky to have a fucking job and you think I'm going to pay you." (*Id.*) Haycock

4    didn't place his hands on Henson or "pin" him physically, but he was in Henson's

5    personal space and poked Henson's chest during the argument. (*Id.* at 9.) Haycock

6    didn't hit Henson. (*Id.*) The argument continued for five to ten seconds after Plaintiff

7    walked in and then people went their separate ways. (*Id.* at 10-11.) A couple of days

8    later Plaintiff called the EEO Officer, Colleen Scott, and told her, "[t]his is what

9    happened, this is what I witnessed." (*Id.* at 15.) Plaintiff also spoke over the telephone

10   with Rod Moore, of the Inspector General's office, and "told him the situation, advised

11   him." (*Id.* at 15.) He also spoke to the associate warden of operations "to brief her what

12   happened." (*Id.* at 16.)

13        Plaintiff asserts that "Plaintiff's support of Henson and reporting activity in this

14   regard was expressive conduct on a matter of public concern" because "[c]itizens

15   evaluating the performance of the Department of Corrections and its administrators

16   would want to assure themselves that employees are not brutalized in the workplace on

17   pay issues or otherwise." (Dkt. no. 59 at 3.) Plaintiff's support of Henson amounted to

18   consolation and reassuring Henson that Plaintiff was there to help if Henson needed it.

19   (Dkt. no. 59-1, Exh. 1 at 14.) Henson himself never made a complaint. (Dkt. no. 47-1,

20   Exh. 2 at 8.) Further, the content of Plaintiff's speech is not clear. Plaintiff does not

21   provide any deposition testimony from the people he spoke to or even describe in detail

22   what he said in his conversations with the EEO Officer, the IG's office, and the associate

23   warden. From his deposition testimony, it appears that he described what he

24   "witnessed," which was five to ten seconds of an argument regarding overtime pay. He

25   did not witness Henson being physically "pinned" or brutalized. Plaintiff does not state

26   that he complained about the working conditions of the staff generally or the staff being

27   unfairly denied overtime pay.

28   ///

1        From the evidence presented to the Court, Plaintiff has not met his burden of

2    demonstrating that his speech regarding the interaction between Haycock and Henson

3    was on a matter of public concern.

4        The Complaint also asserts that Haycock admitted that he, Watson, and Palmer

5    agreed that Plaintiff "would be non-promotable as a sanction" due to his support of

6    Henson, and that Plaintiff complained about this to the EEO Officer. (Dkt. no. 1-2 ¶¶ 9-

7    10.) In his deposition, Plaintiff states that around November 2011, Haycock told Plaintiff

8    in the parking lot of a Costco that Watson had him and Palmer convinced that Plaintiff is

9    not worthy of promotion because he's "nothing but a problem," that he will "snitch on

10   everything they do," and that Haycock felt bad about that. (Dkt. no. 59-1, Exh. 1 at 19-

11   20.) Plaintiff says he sat down with EEO Officer Scott, and discussed the "information"

12   he had. (*Id.* at 22.) Scott's declaration confirms that on January 19, 2012, she

13   interviewed Plaintiff regarding his "concerns related to twice being passed over for

14   promotion to correctional lieutenant and his claim that the non-selection was retaliation."

15   (Dkt. no. 47-2, Exh. 8.) Scott referred Plaintiff's report to the IG's office. (*Id.*) Plaintiff

16   argues that his "complaint regarding retaliation in not promoting him was of public

17   concern." (Dkt. no. 59 at 4.) Plaintiff contends that  "[t]he public naturally wants and

18   desires the process of hiring Lieutenants to be open, competitive, fair and reasonable,

19   as opposed to being designed to exclude persons who exercise their rights under the

20   law and take a stand against managerial intimidation by violence." (*Id.*)

21       Defendants argue that Plaintiff's concerns were about his own promotional

22   opportunities and were completely self-serving. (Dkt. no. 47 at 8.) The Court is not clear

23   on the content of Plaintiff's discussion with EEO Officer Scott and what they specifically

24   discussed in their January 19, 2012, meeting. Viewing the evidence in the light most

25   favorable to Plaintiff, however, Scott's declaration demonstrates that Plaintiff sat down

26   with the EEO Officer and complained about being denied promotions as a means of

27   retaliation. From the context of his deposition testimony, it can be gleaned that Plaintiff

28   communicated "information" to Scott about what Haycock told him in the Costco parking

1    lot. (Dkt. no. 59-1, Exh. 1 at 22 ("That's when I went back — after the conversation with

2    Damon Haycock, I went back to Colleen Scott with the information I had."))

3         Plaintiff has not provided evidence that his complaints to EEO Officer Scott were

4    anything more than an individual personnel dispute or grievance. *See Desrochers*, 572

5    F.3d at 708-10. Plaintiff wanted to be lieutenant, was denied twice, and was told that the

6    three individual Defendants opposed it because one of them, Watson, convinced the

7    others that Plaintiff was not worthy of a promotion — that he was "a problem" and "a

8    snitch." Plaintiff apparently shared this information with EEO Officer Scott. The Court

9    struggles to conclude that such speech is anything more than an "internal dispute of no

10   interest to anyone outside a narrow 'bureaucratic niche.'" *Demers*, 746 F.3d at 416

11   (citing *Tucker*, 97 F.3d at 1210; *Desrochers*, 572 F.3d at 713); *see also Longmire v. City

12   of Oakland*, 584 F'Appx 623, 623–24 (9th Cir. 2014) (finding "letter [that] alleged that

13   Defendants' internal affairs investigation violated [plaintiff's] procedural due process

14   rights" was not speech "on a matter of public concern").

15        There is no evidence that Plaintiff spoke about abuse in his department generally

16   or complained that people who report violations are not promoted. Plaintiff testified that

17   "it's kind of known at work with our department that if you say anything negative . . . [y]ou

18   won't be promoted" and "retaliation is feared by the majority of our staff that if they say

19   something, that's what will happen." (Dkt. no. 59-1, Exh. 1 at 20-21.) However, there is

20   no evidence that he spoke out about this or communicated this knowledge to EEO

21   Officer Scott. This Court can only make its decision based on "what the employees

22   actually said, not what they say they said after the fact." *Desrochers*, 572 F.3d at 711.

23   The evidence suggests that Plaintiff made an individual personnel grievance about

24   Palmer, Watson, and Haycock. Indeed, Plaintiff's First Amendment claim is asserted

25   against those individual defendants only. (*See* dkt. no. 1-2 at ¶ 24.)

26        Because Plaintiff cannot establish that his speech was a matter of public concern,

27   his First Amendment retaliation claim fails as a matter of law. Summary judgment is

28   granted.

1  **V.     CONCLUSION**

2          It is therefore ordered that Defendants Jack Palmer, Adam Watson, and Damon

3   Haycock's Motion for Summary Judgment (dkt. no. 47) is granted.  The Clerk is directed

4   to enter judgment in favor of Defendants and close this case.

5

        DATED THIS 12th day of March 2015.

6

7                                                    _____

8                                                    MIRANDA M. DU
                                                      UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28